IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DOE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-09-CV-1434-B |
| | § | |
| CITY OF SAN ANGELO, | § | |
| ET AL. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant City of San Angelo, Texas ("the City") has filed a motion to transfer this civil action to the San Angelo Division of the Northern District of Texas. For the reasons stated herein, the motion is granted.

I.

This is a sexual harassment, gender discrimination, and retaliation case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* In his most recent complaint, plaintiff, an adult male formerly employed by the City as a manager at the municipal airport, alleges that he was subjected to a hostile work environment, treated differently than similarly situated female employees, and ultimately terminated from his employment on account of his gender and for opposing discrimination in the workplace. (*See* Plf. Am. Compl. at 2-5, ¶¶ 5-18 & 6-8, ¶¶ 21-35). Plaintiff further contends that he was sexually harassed and assaulted by the City's former mayor, J.W. Lown. (*Id.* at 5, ¶ 19). After confiding his frustrations and grievances to Lown, with whom plaintiff had a personal friendship, plaintiff states:

> Mayor Lown promised to assist Plaintiff to get the harassment and misconduct stopped. But in January of 2008, Defendant Lown assaulted Plaintiff by kissing and attempting to hold Plaintiff's hand. When Plaintiff attempted to leave the Mayor's home, Defendant Lown strongly encouraged Plaintiff to stay the night with him in his bed, which Plaintiff refused. After that encounter, Mayor Lown pursued Plaintiff with repeated phone calls that had nothing to do with city business, and through contacts outside the scope and course of Plaintiff's job responsibilities and workplace. When Plaintiff's polite rejections were ignored, Plaintiff stopped answering the Mayor's harassing phone calls.

(Plf. Am. Compl. at 5, ¶ 19). Believing he cannot receive a fair trial in San Angelo and that Dallas is a more convenient forum for litigating his claims, plaintiff filed this action in the Dallas Division of the Northern District of Texas. The City now moves to transfer venue to the San Angelo Division pursuant to 28 U.S.C. § 1404(a).[1] The motion has been fully briefed by the parties and is ripe for determination.

II.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 593 (N.D. Tex. 2003), *quoting Andrade v. Chojnacki*, 934 F.Supp. 817, 832 (S.D. Tex. 1996). Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, section 1404(a) tempers the effects of the exercise of that privilege by allowing a district court to transfer the case to another judicial division if such transfer "would make it

---

[1] The City also filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted and a Rule 12(b)(2) motion to dismiss plaintiff's intentional tort claims for lack of subject matter jurisdiction. In view of the resolution of the venue issue, the court does not decide the other motions.

substantially more convenient for the parties to litigate the case." *Remmers v. United States*, No. 1-09-CV-345, 2009 WL 3617597 at *2 (E.D. Tex. Oct. 28, 2009), *quoting Gardipee v. Petroleum Helicopters, Inc.*, 49 F.Supp.2d 925, 928 (E.D. Tex. 1999); *see also In re Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 1336 (2009). The district court must exercise its discretion "in light of the particular circumstances of the case." *Remmers*, 2009 WL 3617597 at *2, *quoting Hanby v. Shell Oil Co.*, 144 F.Supp. 673, 676 (E.D. Tex. 2001).

The threshold inquiry under section 1404(a) is whether the action could have been brought in the judicial district to which transfer is sought. *Volkswagen*, 545 F.3d at 313. If venue is proper in the transferee district, the defendant must show "good cause" for the transfer. *Id.* at 315. To show "good cause," the defendant must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* If the defendant cannot meet this burden, the plaintiff's choice of forum should be respected. *Id.*; *see also BlueEarth Biofuels, LLC v. Hawaiian Electric Co., Inc.*, No. 3-08-CV-1779-L, 2009 WL 918459 at *4 (N.D. Tex. Apr. 3, 2009). However, when the defendant demonstrates that the transferee venue is clearly more convenient, it has shown good cause and the case should be transferred. *See Volkswagen*, 545 F.3d at 315; *Remmers*, 2009 WL 3617597 at *2.

In deciding a motion to transfer venue, the court must consider various private and public interest factors. *Volkswagen*, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes resolved at home; (3) the familiarity of the forum with the law that governs the action; and

(4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* While these factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *Id.* Moreover, no single factor is entitled to dispositive weight. *Id.*

A.

The court has little difficulty concluding that plaintiff could have brought this action in the San Angelo Division of the Northern District of Texas. Not only do the defendants reside in that division, (*see* Plf. Am. Compl. at 1-2, ¶¶ 3-4), but all the events giving rise to plaintiff's Title VII claims against the City and his tort claims against Lown occurred there. (*Id.* at 2-8, ¶¶ 5-35). San Angelo is clearly a proper forum for litigating this dispute.

B.

Next, the court considers the private interest factors relevant to the section 1404(a) transfer analysis. "The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue." *BNSF Railway Co. v. OOCL (USA), Inc.*, ___ F.Supp.2d ___, 2009 WL 3294859 at *6 (N.D. Tex. Oct. 14, 2009), *quoting Woolf v. Mary Kay, Inc.*, 176 F.Supp.2d 642, 650 (N.D. Tex. 2001). "The convenience of non-party witnesses is accorded the most weight." *Id.* The evidence submitted by the City shows that 14 potential witnesses, most of whom are municipal employees, reside within the San Angelo Division. (*See* Def. Reply App. at 8-9, ¶ 2). As Teresa Special, an Assistant City Attorney for the City of San Angelo who investigated plaintiff's EEOC charge, states in her affidavit:

> If this case were tried in the Dallas Division it would be a hardship on myself and these employees to have them travel from San Angelo to Dallas for a trial which will likely last several days. Having these employees away from work, all at the same time, will be a significant disruption to the operations of the City of San Angelo. If the case were transferred to the San Angelo Division and the case tried in that Division, these potential witnesses would not have to be away from

> work during the entire time of the trial. They could be on standby and performing their job functions in the City of San Angelo. When it was time for them to give testimony, they could leave their job functions and travel a short distance to the courthouse to give testimony. When they were finished with their testimony they could then return to their job functions that same day. This would not be possible if the case were tried in the Dallas Division.

(*Id.* at 9, ¶ 3). Plaintiff counters that Dallas is a more convenient forum for him and two of his witnesses--Grayce McDuffie and Mark Lacy. (*See* Plf. Resp. at 3, ¶ 10 & Plf. Resp. App. at 9-15, 16-18). However, plaintiff currently resides in the Chicago area and will have to travel to either Dallas or San Angelo to attend the trial. The same is true for McDuffie, who lives in Colorado Springs, and Lacy, who lives in Austin. (*See* Plf. Resp. App. at 9, ¶ 2 & 16, ¶ 2). Although Dallas may be more accessible by air than San Angelo, there are five daily connecting flights from DFW airport to San Angelo. Airfare from Chicago, Colorado Springs, and Austin to San Angelo is only slightly more expensive than airfare from those cities to Dallas. Even if plaintiff and his witnesses have to change planes and pay a little more in airfare, it still is more convenient and much less disruptive for them to travel to San Angelo from their homes outside the state than it is for the City's 14 witnesses to travel from San Angelo to Dallas--a distance of 232 miles.

It is also significant that all the events giving rise to plaintiff's claims occurred in San Angelo. Plaintiff does not allege a single act of sexual harassment, discrimination, retaliation, or tortious conduct that occurred outside of San Angelo, much less in Dallas. (*See* Plf. Am. Compl. at 2-8, ¶¶ 5-35). While plaintiff's choice of forum is entitled to substantial weight, that factor has "reduced significance" where most of the operative facts occurred outside the district or division. *Baxa Corp. v. ForHealth Techs., Inc.*, No. 3-05-CV-2274-D, 2006 WL 680503 at *2 (N.D. Tex. Mar. 15, 2006), quoting *Minka Lighting, Inc. v. Trans Globe Imps., Inc.*, No. 3-02-CV-2538-G, 2003 WL 21251684 at *1 (N.D. Tex. May 23, 2003); *see also Volkswagen*, 545 F.3d at 314-15.

The other private interest factors either are neutral or have dubious application after *Volkswagen*. Regardless of whether this action is litigated in Dallas or San Angelo, the parties may take advantage of modern technology to minimize any inconvenience to themselves and their witnesses and to control the costs of litigation. *See Volkswagen*, 545 F.3d at 316 (due to increasing technological advances, concerns regarding relative ease of access to sources of proof have been significantly diminished, though not rendered completely superfluous). Most relevant documents can be exchanged electronically, "making the physical location of the documents of lesser consequence." *BlueEarth*, 2009 WL 918459 at *5 (citing cases). The parties may depose any witness who is beyond the subpoena range of the court and is unwilling to travel to San Angelo or Dallas for trial. *Id.* (citing cases). On balance, the court determines that the private interest factors weigh in favor of transfer.

C.

The public interest factors also weigh in favor of transferring this action to San Angelo. Of particular importance is the local interest in adjudicating local disputes. *See BNSF Railway*, 2009 WL 3294859 at *6, *citing In re Volkswagen AG*, 371 F.3d 201, 205-06 (5th Cir. 2004). This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon people of a community [that] has no relation to the litigation." *Id.*, *quoting Volkswagen*, 371 F.3d at 205-06. Because Dallas has absolutely no connection to the facts of the case or to any of the parties, it would be more fair and efficient for a jury from the San Angelo Division to decide issues involving allegations of sexual harassment, discrimination, retaliation, and tortious conduct by officials of a municipality located in that division. *See Tingey v. City of Sugar Land*, No. V-07-28, 2007 WL 2086672 at *2 (S.D. Tex. Jul. 16, 2007) (transferring Title VII employment discrimination and retaliation case against City of Sugar Land from Victoria Division to Houston Division because,

*inter alia*, a Houston jury had a greater interest in deciding matters related to alleged discriminatory practices by a municipality in that division).

The other public interest factors have no impact on the transfer analysis. The court is unaware of any administrative difficulties flowing from court congestion in either the San Angelo or Dallas Divisions. Although the district judge assigned to the San Angelo docket has more pending cases than the district judges in Dallas, there is no evidence that the trial will be substantially delayed if the case is transferred. *See BlueEarth*, 2009 WL 918459 at *6, *citing Sanchez v. Rawlings*, No. G-06-CV-718, 2007 WL 1040469 at *2 (S.D. Tex. Apr. 2, 2007) (possibility of brief delay does not weigh for or against transfer). Nor are there potential issues involving the familiarity of the forum with the law governing this action, the avoidance of unnecessary problems of conflict of laws, or the application of foreign law. All the judges of this court are well-versed in the law governing plaintiff's Title VII and state tort claims.

### D.

Plaintiff further argues that he cannot get a fair trial in San Angelo. (*See* Plf. Resp. at 6, ¶ 20). This argument implicates the "interest of justice" component of section 1404(a). Although the letter of the statute might suggest otherwise, it is well established that the "interest of justice" is an independent factor, "albeit an extremely amorphous and somewhat subjective one," in the transfer analysis. 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3854 at 246 (3d ed. 2007); *see also BNSF Railway*, 2009 WL 3294859 at *8; *Doubletree Partners, L.P. v. Land America American Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599 at *5 (N.D. Tex. Dec. 3, 2008). Whether the parties can obtain a fair trial in the transferee forum is one of several factors that inform the court's discretion in deciding whether to transfer a case in the "interest of justice." *See*

*Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696 (8th Cir.), *cert. denied*, 118 S.Ct. 629 (1997).

As evidence that he cannot get a fair trial if the case is transferred to San Angelo, plaintiff relies on the affidavit of Susan Hays, a Dallas lawyer who grew up approximately 80 miles from San Angelo. (*See* Plf. Resp. App. at 1). Hays has maintained contact with family and friends who live in San Angelo and nearby communities, and recently served as an attorney ad litem in the high-profile FLDS custody case in San Angelo, which she describes as a "media circus." (*Id.* at 1 & 3, ¶ 8). According to Hays, former San Angelo Mayor J.W. Lown is an extremely popular public figure who was reelected in May 2009 with almost 90% of the vote. (*Id.* at 2, ¶¶ 1-2). Even after Lown, who is gay, resigned his office less than two weeks after the election to move to Mexico with his male companion, he continued to receive strong support from the San Angelo community. (*Id.* at 2, ¶¶ 3-4). In view of Lown's popularity and the anticipated publicity surrounding this case, Hays believes it would be "very damaging to individual lives and the fair administration of justice" if the case is transferred to San Angelo. (*Id.* at 3, ¶ 8). More particularly, Hays states:

> I believe that if this case is tried in San Angelo another media circus-- one much closer in intensity to that which surrounded the FLDS hearings than Mayor Lown's resignation--will ensue. I also believe, based on my past experiences working on high-profile, media-drenched cases, that the attention will be extremely uncomfortable if not damaging to the lives of witnesses. Trying the case in Dallas, precisely because of the larger docket load, will vastly dilute the media attention on this case, which involves much more directly sexual allegations than even the FLDS case.

(*Id.* at 3, ¶ 10). Hays also points out that the FLDS criminal trials, involving allegations of child sex abuse, are currently underway in a county adjacent to San Angelo. (*Id.* at 3, ¶ 13). If plaintiff's case is transferred to San Angelo, Hays fears that it would get caught up in the ongoing media coverage of the FLDS trials and that Willie Jessop, the self-appointed spokesperson for FLDS who has

expressed hostility towards homosexuals, would discuss Lown's sexuality and alleged behavior in an attempt to distract attention from the FLDS defendants. (*Id.* at 3-4, ¶ 14). Hays concludes her affidavit by stating that the allegations of Lown's inappropriate sexual behavior, the lingering publicity attendant to his resignation as mayor, and the media attention given to the FLDS case "all combine to make it impossible for the court and parties [ ] to empanel a jury in the San Angelo Division of the Northern District of Texas that would not be unduly influenced by the media coverage and distracted from the actual evidence." (*Id.* at 4, ¶ 15). Similar opinions are expressed by Mark Lacy, a friend of plaintiff, who believes that the San Angelo community is biased against homosexuals and questions whether plaintiff can receive a fair trial there. (*Id.* at 17-18, ¶¶ 4-10).

Not only do Hays and Lacy offer conflicting assessments of the prevailing attitude of the San Angelo community towards homosexuals,[2] but their anecdotal observations and subjective opinions have little probative value. Without some empirical evidence that plaintiff cannot receive a fair trial in San Angelo, the court is unable to conclude that the "interest of justice" requires keeping this case in Dallas--a venue that has absolutely no connection to the facts or to the parties. *See Prock v. Woodmont Sherman GP, L.L.C.*, No. 2-06-CV-484 (TJW), 2007 WL 1079940 at *3 (E.D. Tex. Apr. 9, 2007) (mere possibility of unfairness and prejudice among potential jurors in Sherman Division because they patronize marketplaces developed by defendant did not prevent transfer of case to Sherman).

## CONCLUSION

The City's motion to transfer venue [Doc. #4] is granted. The clerk is directed to transfer this case to the San Angelo Division of the Northern District of Texas.

---

[2] In her affidavit, Hays states that "I was both fascinated and proud that San Angelo had a gay mayor and was pleased with the mostly positive response to his announcement." (*See* Plf. Resp. App. at 2). This assessment conflicts with Lacy's accusation that the San Angelo community is biased against homosexuals. (*See id.* at 17, ¶ 4).

SO ORDERED.

DATED: December 21, 2009.

                                              JEFF KAPLAN
                                              UNITED STATES MAGISTRATE JUDGE